Simon Peter Serrano, WSBA #54769
Silent Majority Foundation
5238 Outlet Drive
Pasco, WA 99301 (917) 587-8153
Email: pete@smfjb.org

Christopher Dunn (*Pro hac vice application forthcoming*)
Dunn Employment Law, LLC
P.O. Box 4124
Madison, CT 06443
(203) 903-7650
cdunn@dunnemploymentlaw.com

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SCOTT BARTHOLOMEW,<br><br>                    Plaintiff,<br><br>v.<br><br>STATE OF WASHINGTON; WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, a Washington State Governmental Agency; GOVERNOR JAY INSLEE, in his official and individual capacity; DONALD CLINTSMAN, in his official and individual capacity as the Secretary of Department of Social and Health Services; WENDY LONG in her official and individual capacity as the Human Resources Director of Department of Social and Health Services; STEVE LOWE, in his official and individual capacity as the Director of the Office of Fraud and Accountability; and LEAH STAHDUHAR, in her official and individual capacity as the Deputy Director of the Office of Fraud and Accountability,<br><br>                    Defendants | Case No.:<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Scott Bartholomew, by and through his attorneys, SIMON PETER SERRANO

COMPLAINT AND JURY DEMAND - 1

AND DUNN EMPLOYMENT LAW, LLC, as and for his Complaint against Defendants,

STATE OF WASHINGTON; WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH

SERVICES, a Washington State Governmental Agency; GOVERNOR JAY INSLEE, in his official and

individual capacity; DONALD CLINTSMAN, in his official and individual capacity as the Secretary of

Department of Social and Health Services; WENDY LONG in her official and individual capacity as the

Human Resources Director of Department of Social and Health Services; STEVE LOWE, in his official and

individual capacity as the Director of the Office of Fraud and Accountability; and LEAH STAHDUHAR, in

her official and individual capacity as the Deputy Director of the Office of Fraud and Accountability, states

as follows:

<u>**PARTIES**</u>

    1.    Plaintiff SCOTT BARTHOLOMEW ("Bartholomew") is an individual residing in

Citrus County, Florida and who was residing in Kitsap County, Washington at the time of the

acts and events complained of herein.

    2.    Defendant State of Washington is a state organized under the laws of the United

States.

    3.    Defendant Washington State Department of Social and Health Services ("DSHS")

is a governmental agency of the State of Washington. DSHS is responsible for implementing and

ensuring compliance with state and federal constitutional and statutory protections for

employees.

    4.    Defendant Jay Inslee, governor of Washington, is named here in his official and

individual capacity. Governor Inslee, in his official capacity, exercises general responsibility,

supervision, and oversight of the policies, practices, and operations of the DSHS and the hiring,

supervision, and retention of the Department's Secretary. As the Chief Executive of the State of

COMPLAINT AND JURY DEMAND - 2

Washington, Governor Inslee is responsible for implementing and ensuring compliance with state and federal constitutional and statutory protections for employees.

5.    Donald Clintsman is the Secretary of DSHS and is named here in his official and individual capacity. Secretary Clintsman, in his official capacity, exercises general responsibility, supervision, and oversight of the policies, practices, and operations of DSHS, including over the Office of Fraud and Accountability ("OFA"), and over proper and lawful implementation of the Governor's Covid-19 vaccination mandate proclamations.

6.    Wendy Long is a Director of Human Resources of DSHS and is named here in her official and individual capacity. Director Long, in her official capacity, exercises general responsibility, supervision, and oversight of the policies, practices, and operations of DSHS, including over the OFA, and over proper and lawful implementation of the Governor's Covid-19 vaccination mandate proclamations.

7.    Steve Lowe is the Director of the OFA and is named here in his official and individual capacity. Director Lowe, in his official capacity, exercises general responsibility, supervision, and oversight of the policies, practices, and operations of the OFA, and over proper and lawful implementation of the Governor's Covid-19 vaccination mandate proclamations.

8.    Leah Stahduhar is Deputy Director of the OFA and is named here in her official and individual capacity. Director Stahduhar, in her official capacity, exercises general responsibility, supervision, and oversight of the policies, practices, and operations of the OFA, and over proper and lawful implementation of the Governor's Covid-19 vaccination mandate proclamations.

## JURISDICTION AND VENUE

COMPLAINT AND JURY DEMAND - 3

9.    Jurisdiction in this Court is based upon 28 U.S.C. §1331 as it involves a federal question pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title VII"). Further, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367. Injunctive relief is sought pursuant to Fed. R. Civ. P. 65, and by statute and the Court's inherent equitable powers.

10.    Venue is proper in this district as one or more of Defendants' acts and those events complained of occurred herein, pursuant to 28 U.S.C. § 1391.

11.    Defendants are all citizens of the State of Washington. The claims all arose in Washington to Plaintiff's understanding and belief.

**Scott Bartholomew**

12.    Plaintiff Bartholomew was hired by Washington Department of Social and Health Services in October 2007 and worked for Defendants for 14 years.

13.    Plaintiff Bartholomew began his assignment with the OFA within DSHS. His work was exemplary and consistently earned superior reviews. Bartholomew was promoted quickly through the field investigator ranks and was hired as a Regional Fraud Manager in March 2016.

14.    Plaintiff carried out his duties as a Regional Fraud Manager in an exemplary manner. At no time did Defendants have grounds to, nor did it, prior to Plaintiff's assertions of his rights to be exempt from a vaccination, discipline or take any adverse action against the Plaintiff.

15.    On March 20, 2020, Defendants closed all DSHS offices and directed employees to work remotely from home due to the increased spread of Covid-19.

COMPLAINT AND JURY DEMAND - 4

16.    Bartholomew, his staff, and all of OFA began working 100% remotely from home.

17.    On October 12, 2020, DSHS Secretary Don Clintsman ("Clintsman") sent an email to all 17,000 DSHS staff indicating that remote work would continue at least through June 2021.

18.    On August 3, 2021, OFA Director Steve Lowe ("Lowe") sent an email to all OFA staff requesting for employees to state their individual preferences if/when employees returned to their offices from remote work status. The choices included: (1) return to the office full-time; (2) work a hybrid of part-time in the office and part-time at home; or (3) work full-time from home.

19.    On August 9, 2021, Bartholomew was advised via email and letter that Governor Jay Inslee was requiring all state employees to be fully vaccinated by October 18, 2021 or face separation from employment (Proclamation 21-14).

20.    On August 11, 2021, DSHS Human Resources Director Wendy Long ("Long") sent an email outlining the governor's mandate. The email indicated Covid-19 vaccination requirement deadline dates and noted that the process for exemption requests based on religious beliefs would be provided at a later date.

21.    On August 17, 2021, DSHS offered a Religious Accommodation Request Form for those requesting an exemption to the Covid-19 vaccine mandate based on religious beliefs with an August 25, 2021 deadline for completion.

22.    On August 17, 2021, Bartholomew completed and returned his Religious Accommodation Request Form to DSHS Human Resources ("HR"), copying OFA Director Steve Lowe ("Lowe") and Deputy Director Leah Stajduhar ("Stajduhar").

COMPLAINT AND JURY DEMAND - 5

23.     On August 23, 2021, DSHS HR sent Bartholomew and staff a revised and updated Religious Accommodation Request Form 1 and Religious Accommodation Request Form 2 to complete and return by August 30, 2021.

24.     On or about August 24, 2021, Bartholomew completed and returned the updated Religious Accommodation Request forms to DSHS HR. Bartholomew also provided a Statement of Faith and Letter of Affirmation of Religious Practice and Belief from his place of worship, Harborview Fellowship Church.

25.     On September 8, 2021, Bartholomew received a confidential email from Long indicating that "DSHS has determined your request for a religious exemption is based on a sincerely held religious belief and that it prevents you from being vaccinated against COVID-19."

26.     However, the September 8, 2021 email from Long also stated that "After carefully reviewing your job classification, essential functions, and working environment, we have determined the only reasonable accommodation we can offer is the possibility of a reassignment."

27.     Additionally, the September 8, 2021 email further stated, "There are no other accommodations for your position available which sufficiently mitigate or eliminate the risk associated with having an unvaccinated employee performing the essential functions of your position. If you have additional information that supports your ability to be accommodated in your current position, please send that information to religiousrequest@dshs.wa.gov as soon as possible. A follow up meeting may be scheduled."

28.     On September 9, 2021, Bartholomew responded to HR via email indicating he firmly believed, and had the data to back it up, that he could continue to work remotely in his

COMPLAINT AND JURY DEMAND - 6

then current position as he had done during the previous 18 months.

29.    On September 10, 2021, Bartholomew tested positive for Covid-19 and subsequently became very ill with pneumonia and other breathing difficulties from September 14, 2021 to October 3, 2021.

30.    On September 13, 2021, at 4:38 p.m., Bartholomew received another email from DSHS HR advising they could not accommodate him in his current position. They again advised Bartholomew had until 5 p.m. on September 13, 2021 (which was 20 minutes later) to submit a reassignment request and provide an updated resume.

31.    On September 13, 2021, Bartholomew immediately replied the same as his previous response on September 9, 2021, indicating he firmly believed, and had the data to back it up, that he could continue to work remotely in his then current position as he had done during the previous 18 months.

32.    At no time between September 8, 2021 and September 13, 2021 nor any time before or after was there any discussion whatsoever with Mr. Bartholomew about potential accommodations to allow him to continue in his position.

33.    No discussion with Mr. Bartholomew transpired to communicate to, or solicit from, Mr. Bartholomew his views in regard to aspects of the job which allegedly could not be accommodated.

34.    DSHS failed to engage in an interactive process with Bartholomew.

35.    On September 28, 2021, Bartholomew received from Long a Notice of Intent to Separate for Non-Disciplinary Reason. The notice highlighted that Bartholomew needed to receive the first dose of vaccine by October 4, 2021 in order to get the second dose on time to be deemed fully vaccinated by October 18, 2021.

COMPLAINT AND JURY DEMAND - 7

36.    At this point in time, Bartholomew was extremely ill with pneumonia related to a positive Covid-19 test as noted in paragraph 29.

37.    On October 5, 2021, Bartholomew responded via email to Long with a copy to OFA Director Steve Lowe and Deputy Director Leah Stajduhar, further seeking to engage in an interactive process, stating:

> "Good morning, I wanted to take a moment to share an email that I sent back on 9/8/21 regarding the religious exemption and reasonable accommodation. I am fully prepared to be separated from state service for non-disciplinary reasons on 10/18/21. However I want to bring to your attention the asset you are losing. I still strongly feel that I can continue to work in my current position 100% remotely. I have been doing it for over 18 months with a very high level of proficiency. My staff have lacked nothing. I have provided them with everything they need physically and emotionally to do their jobs at a high level. I am thorough in everything that I do. I did not want you to think that I forgot or was a non-participant in the accommodation process. That is why I included a copy of my email sent on 9/8. I have no desire to be reassigned or transferred to a different position. I am a master of my craft and have excelled working in my current position. Why would I give it up? I value my staff more than you can possibly imagine. I would not willingly leave them. I also feel like this entire situation and process is wrong. I feel that it is discriminatory and me being unwillingly reassigned to a different position is a punitive action. Thanks and have a good day."

38.    On October 7, 2021, hearing nothing back, Bartholomew submitted an appeal to his pending separation from employment to the Office of Financial Management Personnel Resources Board ("OFM PRB").

39.    On October 14, 2021, Bartholomew received an email regarding his pending separation with attachments regarding loss of benefits and loss of leave balances.

40.    On October 15, 2021, Deputy Director Leah Stajduhar along with another employee Darci Ebinger arrived at Bartholomew's personal residence to pick up his state assigned vehicle, computer, credentials and other assigned equipment.

41.    On October 18, 2021, Bartholomew received official notification via email and letter via USPS that he was no longer employed by DSHS due to not receiving a mandatory

COMPLAINT AND JURY DEMAND - 8

Covid-19 vaccine.

42.    On March 7, 2022, Bartholomew filed a charge of employment discrimination (Charge No. 551-2022-00801) against Defendants with the U.S. Equal Employment Opportunities Commission ("EEOC").

43.    Bartholomew's position required such infrequent in person contact, if any at all, such that he could have been accommodated without imposing an undue hardship on Defendants.

44.    On December 6, 2022, an administrative hearing took place regarding Bartholomew's appeal made to OFM PRB as referred to in paragraph 38. DSHS was represented by the Attorney General's office, and it was in response to a Motion for Summary Judgment. The 40-minute hearing was facilitated by a 3 person PRB board. In that hearing the board specifically asked the State of the approximately 1,200 employees who requested an exemption based on religious beliefs, how many were accommodated in their current positions. The State could not provide an answer. The board also asked the State what created an undue hardship in allowing Bartholomew to continue to work in his position when he had done so effectively for the previous 18 months. The State did not provide a sufficient response.

45.    On December 16, 2022, the EEOC issued a "right to sue" letter to Bartholomew.

**Intentional Discrimination**

46.    Governor Inslee is hostile to religious opposition to the Covid-19 vaccination, such as that provided by Bartholomew.

47.    Governor Inslee's opposition to such faith-based opposition to the Covid-19

vaccination is revealed by his public statement regarding his own faith: "I believe in science."[1] Inslee felt the need to state his faith in science with the use of the words "believe in." A believing in, in this context, means: "be of the opinion that something is right or acceptable."[2] Note, Inslee did not say, I believe in the science on Covid-19, he stated something far more broad and seemingly omnipotent, an overarching, overruling concept: science. Inslee's comment, more fully is: "I believe in science — and the science on vaccines is crystal clear: vaccinations are safe and protect public health. Anti-vax misinformation is a danger to public health…"[3] Further, note that Inslee did not say I think, or I've reviewed the science and I've concluded it is sound or accurate. No, he stated it was a belief. Any opposing belief would not be stood for.

48.    Inslee's hostility and intolerance, and unwillingness to stand for any religious opposition was revealed by his administration's statement: "Exemptions: medical for sure; and religious (if we have to; if yes, as narrow as possible)."[4] As reported by the Family Policy Institute of Washington, "That's what Governor Inslee's General Counsel Kathryn Leathers wrote in an email to the Attorney General's office as they coordinated the language for

_____

[1] Governor Jay Inslee on Vaccines, Do Presidential Candidates Share our Values? May 30, 2019, https://secular.org/2019/05/governor-jay-inslee-on-vaccines/. *See also,* Claudia Koerner, *We Asked All Of The 2020 Presidential Candidates Their Thoughts On Vaccines. Here's What They Said*, May 1, 2019, BUZZFEED NEWS, https://www.buzzfeednews.com/article/claudiakoerner/2020-presidential-candidates-vaccines-measles-health.
[2] https://www.google.com/search?q=define%3A+believe+in&sxsrf=AJOqlzWb-hafcdfUt4q2KBo3zXdj5iWLoQ%3A1677636253974&ei=nbL-Y7OQO56GwbkP2_24uAw&ved=0ahUKEwjz0uuH0rn9AhUeQzABHds-DscQ4dUDCBA&uact=5&oq=define%3A+believe+in&gs_lcp=Cgxnd3Mtd2l6LXNlcnAQAzIFCAAQgAQyBQgAEIAEMgUIABCABDIFCAAQgAQyBQgAEIAEMgYIABAWEB4yBggAEBYQHjIGCAAQFhAeMgYIABAWEB4yBggAEBYQHjoHCCMQsAMQJzoKCAAQRxDWBBCwAzoECCMQJzoFCAAQkQJKBAhBGABQ5AJY9wRg4QdoAXABeACAAAWOIAYICkgEBM5gBAKABAcgBCcABAQ&sclient=gws-wiz-serp.
[3] *See supra* note 1.
[4] *Id.*

COMPLAINT AND JURY DEMAND - 10

Washington state citizens to obtain a religious exemption from the COVID-19 vaccine

mandate."[5]

49.    The Family Policy Institute of Washington's reading of Inslee's position, as also

perceived and experienced by Bartholomew[6], is captured as follows:

> *"If* we have to. As in, if we have to honor someone's religious beliefs…a central tenet
> of the Civil Rights Act of 1964, AND the US Constitution, and our State
> Constitution: '*Absolute freedom of conscience in all matters of religious sentiment,
> belief and worship…*'
>
> *As narrow as possible*. Translation: Governor Inslee's office does not actually care
> about your deeply held religious beliefs. His administration is going to squeeze as
> much power as they can into this exemption process to force compliance to their
> political whims or you are fired!
>
> Those who are rejecting the vaccine on religious grounds are being laughed at by the
> state government and pagan left.
>
> According to the criteria set by Inslee's office, for someone to be exempt from the
> vaccine on religious grounds, they would have to have never taken medicine from a
> healthcare provider in their adult lives. This makes the religious exemption next to
> impossible.
>
> This completely disregards the fact that a primary objection to the vaccine by many of
> the faithful is its use of fetal cell lines. To force vaccines made or tested using
> murdered babies' fetal cells on people without their consent is grossly immoral.
> This is a war on people of all faiths, not just Christians. The disrespect shown to the
> religious is unfathomable, and the Washington state government is pulling no
> punches to make sure every last state employee becomes vaccinated regardless of if
> they want to."[7]

---

[5] *Id. See also*, Brandi Kruse, *Emails: State sought to make religious vaccine exemption 'as narrow as possible,'* Q13
FOX, Aug.25, 2021, https://www.q13fox.com/news/emails-state-sought-to-make-religious-vaccine-exemption-as-narrow-as-possible.
[6] The views described are not Bartholomew's yet capture Bartholomew's as to the general antipathy of Inslee to
faith-based objections to the Covid-19 vaccination mandate and treatment toward religious exemptions.
[7] Mark Miloscia|, *Gov. Inslee must resign if he starts purging Christians from government*, Sep. 4th, 2021,
https://fpiw.org/2021/09/04/gov-inslee-must-resign-if-he-starts-purging-christians-from-government/.

COMPLAINT AND JURY DEMAND - 11

50.    Inslee's war on faith-based opposition also includes his 2015 "administration-wide ban on travel to Indiana in response to Indiana's new 'religious freedom' law."[8]

51.    The only "if we have to" statement is starkly different than the "medical for sure" statement and also is reflective of Inslee's hostility to religious faith-based opposition to the Covid-19 vaccination.

52.    This only "if we have to" language is further quite significant, as it is also in stark contrast to the language Inslee uses in a whole host of traditionally sensitive areas with respect to race and equal rights.

53.    Governor Inslee's motivation is not simply to promote safety, though it is certainly one of his motivations, but also to promote a diminishment in the rights of Christian religious opposition to science as it pertained to the Covid-19 vaccine mandate.

54.    Neighboring Oregon granted "nearly double the rate of faith-based exemptions" as were granted "state workers in Washington."[9]

55.    Governor Inslee's hostility to religious exemptions is part of a broader battle

---

[8] Governor Jay Inslee, https://www.governor.wa.gov/news-media/statement-gov-jay-inslee-indiana%E2%80%99s-new-%E2%80%9Creligious-freedom%E2%80%9D-law (last visited Feb. 28, 2023).

[9] See Jared Wenzelburger, Oregon Approved State Employee Religious Exemptions at Nearly Twice the Rate Washington Did, Oct. 21, 2021, https://www.chronline.com/stories/oregon-approved-state-employee-religious-exemptions-at-nearly-twice-the-rate-washington-did,275729.

"Oregon has granted religious exemptions from Gov. Kate Brown's COVID-19 vaccine mandate to at least 11% of state executive branch workers, nearly double the rate of faith-based exemptions approved for state workers in Washington.
…
Data provided by Gov. Jay Inslee's office shows 6.8% of Washington employees had received religious exemptions as of Tuesday."

*Id*. See also https://twitter.com/GovInslee/status/1244293021404815360 Mar. 29, 2020.

COMPLAINT AND JURY DEMAND - 12

between Inslee and those on a different side of the political battle with respect to science and

abortion, pertinent in that Bartholomew's religious exemption request, like many other religious

exemption requests, bases its objection on the vaccine's history and use of fetal cell lines for

research and development.

     a.   CNN notes "Responding to ideas floated by the Trump administration to

        loosen social distancing guidelines, Washington Gov. Jay Inslee says "we

        need to make decisions based on science and reality."[10] This comment

        reflects Inslee's emphasis on science-based decision-making and something

        he describes as "reality." Sort of a view of truth and his superior existential

        awareness as to the existence of truth, which, of course, contradicts notions

_____

[10] Jake Tapper, *State of the Union,* CNN, May 29, 2020, https://transcripts.cnn.com/show/sotu/date/2020-03-29/segment/01.

The dialog was as follows:

    "TAPPER: President Trump has said that he hopes to use increased surveillance testing to get people in some areas of the country that have not been hard-hit back to work for -- faster.

    I understand your state is not one of those places, necessarily, and it has a lot of hot spots. But if President Trump were to issue the guidelines, guidance to do so, would you lift your statewide order, so that people in parts of the state that are not hard-hit would open their schools or businesses?

    INSLEE: No.

    We need to make decisions based on science and reality. And there are some hard realities we have to understand. And that is, unless we continue a very vigorous social distancing program in my state, this is going to continue to spread like wildfire to every single corner of my state.

    That is an inevitable scientific fact. And we have only one weapon to prevent that. And that is to continue our social distancing."

*Id*.

COMPLAINT AND JURY DEMAND - 13

of faith and belief which may exist apart from science.

b.  This follows on the heels of another Inslee-Trump dispute in the context of

abortion:

i.  "Planned Parenthood was in an abortion funding dispute with the
Trump administration about [*sic*] newly implemented rule prohibiting
participating clinics from referring women for abortions. Instead of
complying, Planned Parenthood backed out of the program, called
Title X.

'We will not comply with their dangerous, unconstitutional, illegal
rules,' Gov. Jay Inslee said Thursday, saying he'll ask the Legislature
to make up the $4 million in federal funding that will be lost for
Planned Parenthood here. 'We will make sure this health care
continues.'

…

Anti-abortion activists who form a key part of President Donald
Trump's base have been campaigning to 'defund Planned
Parenthood.' Among its varied services it is a major abortion
provider, and the activists viewed the grants as an indirect subsidy."[11]

Inslee's hostility to religious exemptions which are rooted in abortion

concerns is not unrelated to Inslee's pro-abortion funding dispute. This is

essentially anti, or opposed to, religious exemptions which are grounded in

references to fetal cell lines.

c.  The State of Washington government's policy of offering the possibility of

accommodation through a replacement position (to an unspecified position)

_____

[11] Gov. Inslee promises funding after Planned Parenthood quits federal program, THE ASSOCIATED PRESS,
Aug. 22, 2019, https://www.kiro7.com/news/local/gov-inslee-promises-funding-after-planned-parenthood-quits-
federal-program/978564714/.

COMPLAINT AND JURY DEMAND - 14

was a sham and was intended to demote those with religious objections to

abortion and eliminate them from the ranks of public service. Bartholomew

was one of the victims of the intentional targeting of religious exemption

seekers.

     d.  Reflecting Inslee's longstanding position, in May 2022, Inslee said,

"'[W]e're going to fight like hell to keep Washington a pro-choice state.'[12]

He also stated, "They will be welcome" referring to those seeking abortions

and the right to abortion. The unstated, but 100% clear message, opposers to

the vaccine, religious objectors "will not be welcome," and religious rights

be damned.

     56.    Plaintiff has identified numerous statements of support for a wide range of human

rights and not a single statement on behalf of the individuals working for the state who would be

terminated if the state could not find an accommodation. Here, you have the state with over 1000

requests for accommodation and it only offered to accommodate 46, as of December 31, 2021,

and not a single statement of care or concern by the governor for those individuals whose

livelihoods were taken. A clear and unambiguous message: a hostility to religious beliefs.

     57.    In fact, Governor Inslee's bias against religion and antipathy toward religion

reveals itself in his treatment of religious gatherings differently than secular gatherings.[13]

---

[12] Laurel Demkovich, *'They will be welcome': Inslee, Washington Democrats commit to 'sanctuary' for those needing abortions in other states*, THE SPOKESMAN-REVIEW, May 3, 2022, https://www.spokesman.com/stories/2022/may/03/they-will-be-welcome-inslee-washington-democrats-o/.
[13] The Alliance Defending Freedom describes the anti-religious position of Governor Inslee, and its legal victory:

COMPLAINT AND JURY DEMAND - 15

_____

***"Christ's Church of Mt. Spokane v. Inslee***

Initially, the State of Washington completely prohibited in-person worship, then it limited religious gatherings to 25 percent capacity or 50 individuals, whichever was less.

Eventually, churches in some parts of the state were permitted to gather at 25 percent capacity or 200 individuals, whichever was less. But they were still receiving unequal treatment compared to many secular businesses, such as restaurants, professional offices, manufacturing facilities, and even cannabis retailers.

Because of this unfair treatment, Christ's Church of Mt. Spokane and Westgate Chapel decided to take a stand.

**Case timeline**
- May 2020: Alliance Defending Freedom filed a lawsuit on behalf of Christ's Church of Mt. Spokane, and Westgate Chapel joined the lawsuit in June.
- December 2020: ADF filed a motion for preliminary injunction and motion to expedite. The day before the hearing, Gov. Inslee issued a new executive order, removing the hard cap on church attendance and imposing the same restrictions on religious and secular activity.
- February 2021: Due to the new executive order, the motion was withdrawn, and the case was dismissed.

**Outcome**
As the Supreme Court and the Ninth Circuit have ruled, the government cannot single out churches for special punishment while allowing others to have greater freedom.

'While responding to crises can be difficult, this case doesn't need to be,' said ADF General Counsel Kristen Waggoner. 'The same Washingtonians who can be trusted to comply with social-distancing and other health guidelines in secular settings can also be trusted in religious settings. The Constitution simply doesn't permit Governor Inslee to assume the worst when people meet to worship but assume the best when those same people go to work, do some shopping, eat at a restaurant, or go about the rest of their daily lives.'

**The bottom line**
'There is no constitutional right to cannabis or alcohol, but there is one that protects attending worship services,' said ADF Senior Counsel Ryan Tucker in response to the governor's decision in December 2020. 'We're grateful the governor has acknowledged our clients' First Amendment freedoms. … [This] is not only a win for Christ's Church of Mt. Spokane and Westgate Chapel. It's good news for all Washingtonians.'"

While we support government officials' efforts to prioritize the public's health and safety, they can't treat religious gatherings worse than secular ones. That's unfair and unconstitutional.

*Washington State Treated Churches Worse Than Breweries and Cannabis Retailers; Washington State treated Christ's Church of Mt. Spokane and Westgate Chapel differently than secular businesses.* Alliance Defendant Freedom, Dec. 23, 2020, Revised Jul. 12, 2022, https://adflegal.org/article/washington-state-treats-churches-worse-breweries-and-cannabis-retailers.

COMPLAINT AND JURY DEMAND - 16

58.     Additionally, within the work setting, even numerous hospitals throughout the country gave religious accommodations to public facing employees, without a requirement that they vacate their position.[14]

59.     Under Governor Inslee, Washington was only one of five states which did not allow a testing option, an option which helps enable religious accommodation.[15]

60.     To be clear, nothing in the Governor's Proclamation (21-14, 21-14.2), dealing with the Covid-19 vaccination requirements for state employees, specifies a policy for the accommodation process, that policy set outside of the governor's Proclamations.

61.     Zero face to face contacts as a requirement to remain in a position unvaccinated, as was added, outside the proclamations, is designed to eliminate religious adherents.

62.     Governor Inslee received a top contribution from both Bill Gates and from Bill Gates Sr.'s University of Washington, in his run for president.[16]

63.     The State website features a statement on Bill Gates Sr.'s passing and his place and importance in Washington and particularly to Governor Inslee, who shares numerous

_____

[14] For example, Houston Methodist Hospital granted 285 exemptions. *See e.g.*, Houston Methodist Hospital suspends 178 employees over COVID-19 vaccine requirement, ABC 13, Jun. 9, 2021, https://abc13.com/houston-methodist-hospital-workers-suspended-covid19-vaccine-requirement-jennifer-bridges-lawsuit/10767264/.
[15] *See e.g.*, Alex Brown, States Embrace Vaccine Mandates Despite Potential Worker Exodus, Sept. 16, 2021, STATELINE.ORG, https://www.yahoo.com/now/states-embrace-vaccine-mandates-despite-035900842.html.
[16] *Top Contributors, federal election data for Jay Inslee, 2020 cycle*, OPENSECRETS.ORG, https://www.opensecrets.org/2020-presidential-race/jay-inslee/contributors?id=N00001725. Microsoft made the sixth highest campaign contribution, at $52,741, and University of Washington made the fifth highest, at $56,852. Note, Governor Inslee elected Libby Gates MacPhee, Bill Gates' sister to the University of Washington Board of Regents. Washington Governor, Jay Inslee, *Inslee announces appointment to University of Washington Board of Regents*, Jan. 17, 2019, https://www.governor.wa.gov/news-media/inslee-announces-appointment-university-washington-board-regents-1#:~:text=Story,service%20as%20a%20UW%20Regent. Bill Gates, Sr. had sat on the board from 1997-2012. *About the Gates family*, University of Washington, https://www.washington.edu/giving/recognition/gates-volunteer-service-award/about-the-gates-family/#:~:text=A%20civic%20leader%20and%20philanthropist,Board%20from%202001%20to%202006.

COMPLAINT AND JURY DEMAND - 17

position preferences and benefited in his career by such an association with both Bill Gates and Bill Gates, Sr.[17]

64.     One of Governor Inslee's top issues in his 2019 run for President was Climate Change; one of Bill Gates' top issues is fighting climate change.[18]

65.     To separate Gates (both) from Inslee is to separate Seattle from Washington, or more to the point, Olympia from Washington – it can't be done, one is a significant and substantial part of the other.

66.     Governor Inslee participated in the 26th UN Climate Change Conference of the Parties (COP26) in Glasgow. There "Inslee announced an executive order to fully electrify Washington state's public fleets and transition to a 100% zero-emission light duty fleet by 2035,

_____

[17] Washington Governor, Jay Inslee, *Inslee statement on the death of Bill Gates Sr.*, Sept. 15, 2020, https://www.governor.wa.gov/news-media/inslee-statement-death-bill-gates-sr.
[18] See e.g., *Innovating to zero!* TED2015, https://www.ted.com/talks/bill_gates_innovating_to_zero/transcript?language=en. Gates opens his talk by explaining how his initiatives are related:

> "I'm going to talk today about energy and climate. And that might seem a bit surprising, because my full-time work at the foundation is mostly about vaccines and seeds, about the things that we need to invent and deliver to help the poorest two billion live better lives. But energy and climate are extremely important to these people; in fact, more important than to anyone else on the planet."

*Id.*

The interplay between these issues is described in conjunction with a grant made by Bill and Melinda Gates to the University of Washington:

> "Recognizing that issues ranging from poverty and equity, to health care access, to climate change and government policies all combine to affect the health and well-being of populations, the initiative will work to develop actionable policies, reforms, interventions, and innovations aimed at reducing disease and health disparities, promoting environmental sustainability, and addressing social and economic inequities around the world."

*Gates Foundation Awards $210 Million to University of Washington* October 26, 2016, https://philanthropynewsdigest.org/news/gates-foundation-awards-210-million-to-university-of-washington

COMPLAINT AND JURY DEMAND - 18

as well as 100% zero-emission medium- and heavy-duty state fleets by 2040," cheered on by Bill

Gates, also at the Glasgow COP26.[19]

67.    There is no separating the politics and political contributions from Governor

Inslee's policies "based on science," such as those dealing with Climate Change and the Covid-

19 vaccinations, both huge issues for Bill Gates, also not a fan of religious exemptions based on

faith: Bill Gates when asked by Rolling Stone, "Does Bill Gates Believe in God?" answered,

> "I agree with people like Richard Dawkins that mankind felt the need for
> creation myths. Before we really began to understand disease and the
> weather and things like that, we sought false explanations for them. Now
> science has filled in some of the realm – not all – that religion used to fill.
> But the mystery and the beauty of the world is overwhelmingly amazing, and
> there's no scientific explanation of how it came about. To say that it was
> generated by random numbers, that does seem, you know, sort of an
> uncharitable view [laughs]. I think it makes sense to believe in God, but
> exactly what decision in your life you make differently because of it, I don't
> know."[20]

This is not a simple and clear yes.[21] Gates has not in any forum stated that religious exemptions

to the Covid-19 vaccine are valid and legitimate, nor given the green light in that regard to any

of those he donates to. The chorus is vaccination and only vaccination is the answer by Gates

and Inslee. (Note, Gates does speak on numerous civil rights issues—woman's reproduction

---

[19] UN Climate Change Conference UK 2021, https://ukcop26.org/?utm_medium=email&utm_source=govdelivery (last visited 030323).
[20] Bill Gates: The Rolling Stone Interview, *The richest man in the world explains how to save the planet*, ROLLING STONE, Mar. 13, 2014, https://www.rollingstone.com/culture/culture-news/bill-gates-the-rolling-stone-interview-111915/.
[21] Gates goes on to explain that he is involved in the Catholic Church: "The moral systems of religion, I think, are super important.  We've raised our kids in a religious way; they've gone to the Catholic church that Melinda goes to and I participate in." *Id*.

COMPLAINT AND JURY DEMAND - 19

rights, race relations—much like his close connection, Inslee).[22]

68.     Inslee's connection to Gates is not insubstantial. The Bill and Melinda Gates Foundation's Emily Ann Hansen, who began working for the foundation in August 2013, married Governor Inslee's son in May 2015.[23] Only one of many connections, to be developed.

69.     Inslee's Chief of Staff, Mary Alice Heuschel, from January 2013 – September 2014, then became the Deputy Director of Human Resources, US K-12 Education, Strategy, Planning & Management for the Bill & Melinda Gates Foundation.

70.     Inslee's connection to Gates includes the participation of the Vice Chairman and President of Microsoft, Brad Smith, as only one of three co-chairs on Governor-elect Inslee's transition team in 2012.[24]

71.     The second co-chair was Ms. Heuschel, who became Inslee's Chief of Staff and then shortly thereafter went to work for the Bill & Melinda Gates Foundation, and the third was the Washington State University president Elson Floyd. Microsoft's co-founder Paul Allen, as an alumnus of Washington State University, was a significant benefactor to Washington State University. Microsoft's Paul Allen also spawned Governor Inslee's Chief of Staff from 2015-2020, David Postman.[25] Three for three.

---

[22] *See e.g., Bill Gates reacts to George Floyd death: 'Black lives matter'; Microsoft founder commits to 'actions and words to help create a more equal and just future,'* Fox Business, Jun. 10, 2020, https://www.foxbusiness.com/technology/bill-gates-george-floyd-black-lives-matter.
[23] *See e.g.,* Governor Inslee's announcement, May 17, 2015, https://www.facebook.com/photo/?fbid=512825662197886&set=the-inslee-family-was-a-big-winner-last-night-we-welcomed-emily-into-our-clan-co.
[24] *See e.g.,* Steve Wilhelm, Puget Sound Business Journal, Nov. 14, 2012, https://www.bizjournals.com/seattle/blog/techflash/2012/11/new-inslee-transition-team-includes.html.
[25] *See e.g., Washington State Liquor and Cannabis Board*, https://lcb.wa.gov/printpdf/board/meet-board. *See also, Gov. Inslee Appoints David Postman as Chair of the Liquor and Cannabis Board*, Mar. 2, 2021,

COMPLAINT AND JURY DEMAND - 20

72.     Of all the Washingtonians to include on the transition team, as co-chairs, the overlap between Microsoft, Bill and Melinda Gates and Inslee is 100%.[26]

_____

https://content.govdelivery.com/accounts/WALCB/bulletins/2c4a5f0 (describing Mr. Postman and his relationship to Paul Allen, along with his longstanding connection to Governor Inslee:

"Prior to his appointment (as Chair of the Liquor and Cannabis Board), Mr. Postman had served as Gov. Inslee's chief of staff from Dec. 2015 until Nov. 15, 2020. He served in the Inslee Administration since the governor took office in 2013, first serving as his executive director of communications. Before joining the administration, Postman served as a senior director at Vulcan Inc., the company headed by Microsoft co-founder Paul Allen. Mr. Postman has a 26-year career as an award-winning journalist in Oregon, Alaska and Washington, including 14 years working as a political reporter for The Seattle Times.)

[26] Note, with respect to Paul Allen's role with WSU, Allen made the largest donation in WSU's history in 2010 to fund and "unlock the secrets of zoonotic diseases, infections that are transmitted from animals to humans" as, of course, is relevant 10 years later to the Covid-19 pandemic. *Washington State University Fundraising, Philanthropist Paul Allen supports global animal health research*, WSU FUNDRAISING NEWS, Dec. 2, 2010, https://foundation.wsu.edu/2010/12/02/philanthropist-paul-allen-gives-26-million-to-support-global-animal-health-research/.

As one science article explains, "By understanding why and how zoonotic diseases emerge in humans, as well as the barriers to this process, it is possible to be better prepared to prevent pandemics like COVID-19 from happening again or at least respond more effectively." Edward C. Holmes, *COVID-19—lessons for zoonotic disease; Disease emergence is driven by human–animal contact in a global viral ecosystem*, SCIENCE, Mar. 10, 2022, Vol 375, Issue 6585, pp. 1114-1115, https://www.science.org/doi/10.1126/science.abn2222.

The CDC notes: "The virus that causes COVID-19, SARS-CoV-2, is a zoonotic virus, which means it can spread between people and animals." Nov. 3, 2021, https://www.cdc.gov/media/releases/2021/s1103-one-health.html.

That said, the Bill and Melinda Gates foundation supported One Health program, supported along with the related donation, noted above, from Paul Allen to WSU, is designed to address the worldwide nature of zoonotic diseases. The CDC refers to the importance of the One Health project:

"Today marks the sixth annual One Health Day, a global campaign that highlights the need for a One Health approach to address shared health threats by recognizing the interconnection between people, animals, and our environment. This approach is more important than ever as we navigate the COVID-19 pandemic. The virus that causes COVID-19, SARS-CoV-2, is a zoonotic virus, which means it can spread between people and animals. As more animals are reported infected with the COVID-19 virus, it becomes increasingly clear that a One Health approach is crucial to address new disease threats that affect both people and animals."

*Id*.

The Bill and Melinda Gates foundation explains the purpose of one of its contributions to the One Health project, or Platform: "To support attendance of the International One Health Congress by the future leaders of One Health from low and middle income countries and to promote the health and productivity of livestock in developing countries by reducing the impact of neglected zoonotic diseases." Committed Grants, Mar. 2018,

COMPLAINT AND JURY DEMAND - 21

73.    Gates's relationship to the vaccine and vaccine requirements along with his influence on Inslee is not insubstantial.

74.    Dan Wattendorf, hired by the Bill and Melinda Gates Foundation, in 2016, had a significant role with the Covid-19 vaccine. The "Washington Post … tells the backstory of how Dan Wattendorf pushed DARPA into experimenting with RNA vaccines — a move that's proved vital in the quest for a quick COVID-19 vaccine."[27]

75.    Bill Gates' involvement in vaccines generally and with the Covid-19 vaccine generally is common knowledge, but before providing pertinent details regarding his involvement with vaccines, it's important to note important facts about Governor Inslee's relationship with Bill Gates (beyond those already mentioned) and how that pertains to the Governor's mandate and intentional discrimination.

---

https://www.gatesfoundation.org/about/committed-grants/2018/03/opp1189447. The Bill and Melinda Gates foundation supports several of the, Covid-19 related, One Health initiatives. *See e.g.*, https://www.devex.com/organizations/one-health-platform-112336. Note, Governor Inslee embraces the One Health Day initiative with a Proclamation, *see e.g.*, Oct. 30, 2019, https://doh.wa.gov/sites/default/files/legacy/Documents/5640//OneHealthGovernorProclamation.pdf. For more on zoonotic diseases and life sciences, and Inslee's relationship to promoting this industry, *see* paragraphs 78 - 80 and *infra* note 33.

Governor Inslee notes both Bill Gates and Paul Allen in regard to their work beyond in computing and into the fields of the life sciences:

> "Did Bill Gates and Paul Allen stop after forever changing the world of personal computing? No. They kept asking "what if?" and not only built on the landscape of the technological world, but delved deep into science, medical research and culture and redefined what giving back means."

Washington Governor's Office, *Inslee's State of the State: Washington's Unwritten Chapter Address to a joint session of the Washington State Senate and House of Representatives*, Jan. 15, 2019, https://medium.com/wagovernor/inslees-state-of-the-state-washington-s-unwritten-chapter-a60d13bd1a2.

[27] Caitlin Faulds, *How Covid Could Launch a New Health Era,* WGBH, Oct. 02, 2020 http://blogs.wgbh.org/innovation-hub/2020/10/2/how-covid-could-launch-new-health-era/.

COMPLAINT AND JURY DEMAND - 22

76.    Beyond Governor Inslee and Bill Gates living in the same state, Governor Inslee and Bill Gates share a priority on life sciences and global health.

77.    Bill Gates is the 6th wealthiest individual in the world[28] and because he champions life sciences and global health as his principal causes, besides addressing climate change, he devotes a considerable sum to the life sciences and global health.

78.    The Life Science industry in Washington state "is the fifth largest industry sector in the state, contributing more than $11 billion to the GDP."[29] Some significant portion of that comes from the efforts of Bill Gates, either directly or indirectly.

79.    While at the same time Gates is extremely influential in the State of Washington's life science and global health initiatives, Bill Gates' funding of, and control over, the Covid-19 vaccine initiatives extends to and includes the four major global organizations regarding development and distribution of the Covid-19 vaccines.[30]

80.    The history of the relationship between Gates and Governor Inslee, in this industry area, includes the fact that in 2016, Governor Inslee announced a "new effort to increase

---

[28] Bill Gates, Cochair, Bill & Melinda Gates Foundation, Forbes, https://www.forbes.com/profile/bill-gates/?sh=59b1cea0689f (last visited Mar. 5, 2023).

[29] *Governor Jay Inslee Joins Washington's Life Science Industry to Celebrate 25 Years of Life-Changing Innovation; The Washington Biotechnology and Biomedical Association marks its 25th anniversary at the Governor's Life Sciences Summit & Annual Meeting,* BUSINESS WIRE, Oct. 24, 2014, https://www.businesswire.com/news/home/20141024005512/en/Governor-Jay-Inslee-Joins-Washington%E2%80%99s-Life-Science-Industry-to-Celebrate-25-Years-of-Life-Changing-Innovation.

[30] *See e.g.,* Erin Banco, Ashleigh Furlong, and Lennart Pfahler, *How Bill Gates and partners used their clout to control the global Covid response — with little oversight; Four health organizations, working closely together, spent almost $10 billion on responding to Covid across the world. But they lacked the scrutiny of governments, and fell short of their own goals, a POLITICO and WELT investigation found.* POLITICO, Sept. 14, 2022,

COMPLAINT AND JURY DEMAND - 23

competitiveness of Washington life science and global health sector."[31] The announcement

touted that "A new Washington Life Science & Global Health Advisory Council met for the first

time yesterday kicking off a concerted effort by Gov. Jay Inslee to strengthen what he says is one

of the state's highest potential innovation sectors."[32] The announcement further explained the

value to Washington: "The life sciences and global health sector is Washington's fifth largest

sector with an average salary of more than $80,000. The state Department of Commerce

conducted an analysis and determined that Washington's life sciences and global health sector is

growing, though not as fast as competitor states. For example, research funding to Washington

from the National Institutes of Health continues to lead most other states, topping $906 million

last year."[33]

---

[31] Washington Governor, Jay Inslee, *Inslee announces new effort to increase competitiveness of Washington life science and global health sector*, Oct. 27, 2015, https://www.governor.wa.gov/news-media/inslee-announces-new-effort-increase-competitiveness-washington-life-science-and-global.

[32] *Id*.

[33] *Id*. Note, fighting zoonotic diseases is a huge part of the Life Science Washington industry. Life Science Washington, "the center of influence for Washington state life sciences" is also known as the Washington Biotechnology & Biomedical Association ("WBBA"). Life Science Washington, https://www.crunchbase.com/organization/life-science-washington.

The biotechnology and biomedical industries are essentially the name for the industry addressing among other things vaccines and vaccine development. MIT's Lincoln Laboratory concisely describes the relationship between "Biotechnology and Human Systems," in terms of their research: "Our R&D seeks to improve human conditions on many fronts. The technology and systems we develop enhance disaster response capabilities, address impacts of climate change, advance defenses against biological and chemical threats, and improve the health and performance of the nation's service members and civilians." *Biotechnology and Human Systems, Responding to Global Needs for Improving Human Conditions*, https://www.ll.mit.edu/r-d/biotechnology-and-human-systems.

Of the focus of the biomedical industry, MIT's Center for Biomedical Innovation, for example, aptly describes the relationship of the field to vaccine development: "MIT CBI research projects focus on biomanufacturing process innovation for production of biologic medicines including monoclonal antibodies, vaccines, viral vectors, and cell therapies. Our main research areas include process analytical technologies, biomanufacturing data analytics, advanced process modeling and control, and continuous manufacturing." *Collaboratively, MIT CBI Designs, Tests, and Implements ways to ensure global access to safe and effective medicines*, MIT CBI, Center for Biomedical Innovation, https://cbi.mit.edu/.

COMPLAINT AND JURY DEMAND - 24

81.     Governor Inslee made it a priority to appeal to the NIH (the NIH, a partner with the Bill and Melinda Gates Foundation).[34] The announcement explains the thinking and the strategy:

> a.   "In the council's first meeting, the majority of the discussion was around how to attract, retain and inspire talent to enter into the sector. Companies here have difficulty finding the people they need and must recruit from outside the state. The council also spoke about promoting Washington as a

---

Life Sciences Washington, formerly WBBA, is significantly tied to vaccine research, design and development, and both Bill Gates and Paul Allen, in that regard, are, or were, in the case of the recently passed Allen, closely aligned with Governor Inslee. See *supra* paragraphs 71 - 72, 78-80, and accompanying notes.

[34] The NIH and the Gates Foundation together account for a little over half of all global health research funding. *See e.g., New Phase of Cooperation Between NIH and the Bill and Melinda Gates Foundation,* NIH, Oct. 7, 2014, https://www.nih.gov/about-nih/who-we-are/nih-director/statements/new-phase-cooperation-between-nih-bill-melinda-gates-foundation. The two are deliberate partners. The collaboration was announced in October 2014, by NIH Director, Francis Collins, M.D., PhD:

"I am delighted to announce today that the National Institutes of Health (NIH) and the Bill & Melinda Gates Foundation (BMGF) have entered into a new phase of cooperation to develop interventions to reduce major global health burdens. The two organizations will launch milestone-driven projects on an agreed set of priorities, to include:

- vaccines to prevent HIV, respiratory syncytial virus, visceral leishmaniasis, and dengue
- experimental models to accelerate TB drug discovery
- maternal and infant nutrition
- reduction of premature births
- healthy cognitive development in children
- affordable point-of-care diagnostic technologies

With the launch of these projects, NIH and BMGF have concluded an agreement to govern confidential disclosures and facilitate the sharing of data and expertise.

…

The NIH and BMGF have enjoyed a working partnership since the creation of Grand Challenges in Global Health (link is external), now celebrating its tenth year. The two organizations together represent 54% of global research and development expenditure on diseases that disproportionately affect populations in low- and middle-income countries." (citation omitted). *Id.*

*See also,* Cathy Kristiansen, *Bill Gates celebrates research collaborations with NIH,* NIH, Jan/Feb 2014, Vol. 13, No. 1, https://www.fic.nih.gov/News/Pages/2013-bill-gates-nih-barmes-global-health-lecture.aspx.

COMPLAINT AND JURY DEMAND - 25

hub for innovation in the life sciences and global health sector."[35]

    b.   "'This council gives us the opportunity play to our state's many strengths. Our job is to come up with tangible proposals to leverage our global health and life science expertise,' said [Lisa] Cohen," executive director of the Washington Global Health Alliance. "'There isn't a state in the country that is deliberately developing a strategy that combines this remarkable expertise. At the end of the day, this work is all designed to deliver better health outcomes. I can't think of a better investment.'"[36]

    c.   "'Washington can be the global leader in life science innovation and health delivery by 2025,' said [Maura] Little,"[37] Inslee's sector lead advisor for life sciences and global health. "This council will help create the roadmap we need as a state to accelerate the growth of the industry to create a healthier population globally."[38]

82.    "I can't think of a better investment" … "accelerat[ing] the growth of the industry to create a healthier population globally," while laudable goals, and rationally related to governmental decisions including fostering use of vaccines, they reflect a motivation to be considered as a science hub, not a spiritual hub, and certainly not a hub for the religious exemption – nor need they be, however, it reflects a motive for going over the line with respect to religious rights.

83.    Governor Inslee's zeal to excel as a life sciences and global health leader is reflected in the strictness of his policy, as reported by Jim Brunner, Seattle Times political reporter, August 18, 2021[39]:

_____

[35] *See supra* note 31.
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] Washington's COVID vaccine mandates ordered by Gov. Jay Inslee are among the strictest in the nation, SEATTLE TIMES, Aug. 18, 2021, https://www.seattletimes.com/seattle-news/health/washingtons-covid-vaccine-mandates-ordered-by-gov-jay-inslee-are-among-the-strictest-in-the-nation/.

COMPLAINT AND JURY DEMAND - 26

"Even before Gov. Jay Inslee expanded his COVID-19 vaccination order to K-12 and higher education employees on Wednesday, Washington's vaccine mandate ranked among the most sweeping and strict in the nation.

Most governors who have imposed such mandates have built in wiggle room, allowing public employees and health care workers to undergo regular coronavirus tests if they choose not to get vaccinated.

Inslee's orders offer no such slack. Employees at state agencies, schools and universities must be fully vaccinated by Oct. 18 or face termination. Inoculations also will be a condition of employment for hundreds of thousands of people working in nursing homes and long-term care facilities."[40]

84.    The strictness of the policy was commented on by employment discrimination law firm Littler Mendelson:

"Jeremy Wood, a Seattle-based attorney with Littler Mendelson, who has helped track policies across the country, said in an email, 'Washington's proclamation covers public contractors more broadly than others we've seen, requiring vaccination for all public contractors at state worksites, including those outside the health care sector.'

'It also doesn't allow testing in lieu of vaccination; we're not aware of any other current statewide mandate that doesn't permit regular testing instead of vaccination.'"[41]

85.    Governor Inslee's August 18, 2023 "hard line"[42] preceded President Biden's "require it" speech on August 23, 2021,[43] and the Biden speech on September 9, 2021 in which Biden announced to the nation his Executive Orders affecting federal employees and federal

_____

[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] Biden said, "If you're a business leader, a nonprofit leader, a state or local leader, who has been waiting for full FDA approval to require vaccinations, I call on you now to do that. Require it." *See e.g.,* Kate Sullivan, CNN, *Biden encourages Americans who have been waiting for full FDA approval to get their Covid vaccination: 'Get it today'*, Aug. 23, 2021, CNN, https://www.cnn.com/2021/08/23/politics/biden-fda-approval-covid-remarks/index.html.

COMPLAINT AND JURY DEMAND - 27

contractors, which would eliminate the testing option for federal employees.[44]

86.    With Governor Inslee's Washington ranked 6th in the nation for active-duty troops and considerable defense budget, Inslee was making sure to be in lockstep with the president.

87.    As of February 2022, the Unites States military granted 15 of 16,000 exemption requests, and that number has not increased significantly (i.e., still ranging less than 500 exemptions.)[45]

88.    Vying for the federal government's favor, and Bill Gates' favor, Inslee's intentional denial of religious exemptions and accommodations, such as that due Scott Bartholomew, went over the line.

89.    Inslee's stance was executed by witting DSHS employees, Clintsman, Long, Lowe, and Stajduhar, who also violated the requirements of accommodation and an interactive process.

90.    Clintsman did not provide any guidance to the contrary to his staff.

91.    Long did not provide any guidance to the contrary to her staff.

92.    Long did not answer the email correspondence from Bartholomew seeking an interactive process.[46]

93.    Lowe did not provide any guidance to the contrary to his staff.

---

[44] *See e.g.*, Amanda Macias, *Biden to mandate Covid vaccine for federal workers, removing option to get tested instead,* Sep. 9, 2021, https://www.cnbc.com/2021/09/09/biden-to-mandate-covid-vaccine-for-federal-workers-removes-option-to-get-tested-instead.html.
[45] Oren Liebermann and Ellie Kaufman, *US military has approved religious exemptions to vaccine mandate for 15 service members out of 16,000 requests*, CNN, Feb. 17, 2022, https://www.cnn.com/2022/02/17/politics/us-military-religious-exemptions-covid-vaccine/index.html.
[46] *See supra* paragraphs 26, 35, 37, and 38.

COMPLAINT AND JURY DEMAND - 28

94.    Lowe did not answer the email correspondence from Bartholomew regarding engaging in an interactive process.[47]

95.    Stajduhar did not answer the email correspondence regarding engaging in an interactive process.[48]

96.    Governor Inslee's August 9, 2021 "COVID-19 Vaccination Requirement" Proclamation 21-14 and September 27, 2021 Proclamation 21-14.2, provided for religious accommodations from the Covid-19 vaccination in theory, but nowhere in the proclamations did it state that no accommodation would be made to allow an employee to remain in their current position, or that no position which has any in person interaction would be allowed to be performed by an unvaccinated individual, or that no interactive process would involve consideration of whether a person could remain in their position with an accommodation. Governor Inslee violated the letter of the Proclamations by creating a spirit and practice of hostility toward religious exemption requests and proper accommodations and processes for accommodations.

97.    Defendants and Defendants' employees implemented Governor Inslee's proclamations in a way that was hostile to religion and religious accommodation of exemption requests.

98.    The acts of the Defendants led to the unlawful termination of Scott Bartholomew.

99.    Defendant Governor Inslee has directed that the Covid-19 vaccination

_____

[47] *See supra* paragraphs 37 and 38.
[48] *See supra* paragraphs 37 and 38.

COMPLAINT AND JURY DEMAND - 29

requirements be permanent, foreclosing the ability of Bartholomew to obtain a position with the

State of Washington unless the Governor is enjoined from such a permanent ban on religious

adherents such as Bartholomew.[49]

## AS AND FOR A FIRST CAUSE OF ACTION
### (Religious Discrimination - Title VII)
### All Defendants, in their Official and Individual Capacity

100.    Bartholomew repeats and re-alleges the foregoing allegations contained in the

preceding paragraphs as if fully set forth herein.

101.    Plaintiff is protected under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §

2000e- 2 *et seq*.) from discrimination in the workplace based on his religion. The statute provides

that it is an unlawful employment practice "to fail or refuse to hire or to discharge any individual,

or otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or

national origin." 42 U.S.C. §2000e-2.

102.    Defendants are Plaintiff's "employer" under Title VII and falls within the

jurisdiction of the statute. The statute provides that "employer" means a person engaged in an

industry affecting commerce who has fifteen or more employees for each working day in each of

_____

[49] *See Directive of the Governor 22-13, COVID-19 Vaccination Standards for State Employees*, Jun, 30, 2022, https://www.governor.wa.gov/sites/default/files/directive/22-13%20-%20State%20employment%20COVID%20vaccine%20requirement%20%28tmp%29.pdf. *See also,* Brett Davis, *Inslee makes COVID vaccines a permanent requirement for many state employees*, THE CENTER SQUARE, Jul 1, 2022, https://www.thecentersquare.com/washington/inslee-makes-covid-vaccines-a-permanent-requirement-for-many-state-employees/article_bbdad0f8-f980-11ec-a002-a715fdf159da.html (describing the directive).

COMPLAINT AND JURY DEMAND - 30

twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person. 42 U.S.C. §2000e.

103.    As further described herein, Plaintiff was subjected to discrimination from Defendants based on his religious beliefs.

104.    Plaintiff was qualified for his position.

105.    Plaintiff suffered adverse action by being terminated from his employment due to his religious beliefs.

106.    Defendants failed to reasonably accommodate Plaintiff's religious beliefs, as required by law, and terminated Plaintiff under circumstances that were discriminatory in nature.

107.    Defendants, pursuant to Defendants' established policies and protocol, determined that Bartholomew had sincere religious beliefs that precluded him from taking the Covid-19 vaccine and notified him of that determination on September 8, 2021.

108.    Defendants, concluding that Bartholomew's religious beliefs were sincere, sought no involvement with Bartholomew prior to making its determination that Bartholomew's religious beliefs could not be accommodated.

109.    Defendants failed to engage with Bartholomew in the interactive process set forth in the EEOC's Compliance Manual on Religious Discrimination before concluding that it would not accommodate his request for a religious exemption.

110.    Defendants' disapproval of Bartholomew's sincerely held religious reasons for refusing to receive a Covid-19 vaccination was one of Defendants' motives for its discriminatory treatment of Bartholomew.

111.    Defendants refused to discuss with Bartholomew the requirements of his position, including refusing to discuss the amount of face-to-face work that was required for the position.

112.    Defendants desired to avoid, and deliberately avoided, a prospective accommodation of allowing Bartholomew to work in his current position with a workable accommodation for his religious belief.

113.    Defendants maintained their motivation was to comply with the Governor's Proclamation, however, Defendants were motivated also by a desire to deny a religious accommodation that would allow Defendant to retain his current role and to fulfil the essential functions of his position.

114.    Accommodating Bartholomew would not have resulted in an undue hardship on Defendants' operations.

115.    Defendants flat out refused, through silence and ignoring Bartholomew's outreach to discuss an accommodation, to engage in a discussion about how he could be accommodated in his role as Regional Fraud Manager.

116.    Due to Defendants' willful and or reckless violations of Title VII, Plaintiff was damaged and is entitled to recover compensatory damages, back and front pay, reinstatement, reputational damages, damages for emotional trauma and distress, punitive damages, reasonable attorneys' fees and costs of the action, pre- and post-judgment interest and injunctive relief.

117.    WHEREFORE, Plaintiff respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.


## AS AND FOR A SECOND CAUSE OF ACTION
### (Hostile Work Environment based on Religion – Title VII)


118.    Plaintiff repeats and re-alleges the foregoing allegations contained in the preceding paragraphs as if fully set forth herein.

COMPLAINT AND JURY DEMAND - 32

119.    Plaintiff is protected by Title VII from harassment based on his religion in his workplace. 42 U.S.C. §2000e-2.

120.    Defendants are Plaintiff's employer pursuant to Title VII.

121.    Plaintiff was subject to harassment based on his religion from Defendants, which subjected him to terms and conditions of his employment that were different from those of persons of different religions and which ultimately led to his termination. This harassment was pervasive, chronic and severe and constitutes a hostile workplace.

122.    The hostile environment includes significantly that at no time after Plaintiff surfaced his request for an accommodation in the position he held did Defendants respond to discuss the reason for failing to accommodate Plaintiff in his position.

123.    Plaintiff was qualified to perform his duties as described herein.

124.    Due to Defendants' willful violations of Title VII, Plaintiff was damaged and is entitled to recover compensatory damages, back and front pay, reinstatement, reputational damages, damages for emotional trauma and distress, punitive damages, reasonable attorneys' fees and costs of the action, pre- and post-judgment interest and injunctive relief.

125.    WHEREFORE, Plaintiff respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Washington Law Against Discrimination – RCW 49.60, WLAD)**
**All Defendants, in their Official and Individual Capacity**

126.    Plaintiff repeats and re-alleges the foregoing allegations contained in the preceding paragraphs as if fully set forth herein.

127.    Defendants are Bartholomew's "employer" and have more than eight employees

COMPLAINT AND JURY DEMAND - 33

in their employ.

128.    Bartholomew was subject to adverse action based on his religion from Defendants, which terminated his employment.

129.    Plaintiff was qualified for his position.

130.    Defendants failed to reasonably accommodate Bartholomew's religious beliefs, as required by law and terminated Bartholomew under circumstances which were discriminatory in nature.

131.    Plaintiff is protected by the Washington Law Against Discrimination (WLAD), RCW 49.60, from discrimination based on his religion in his workplace.

132.    Under WLAD it is unlawful for any employer to refuse to hire or to "discharge or bar any person from employment because of...creed ... or the presence of any sensory, mental, or physical disability" Wash. Rev. Code 49.60.180 (2).

133.    "It is an unfair practice for any employer [t]o discriminate against any person in compensation or in other terms or conditions of employment because of ... creed ... or the presence of any sensory. mental, or physical disability." Wash. Rev. Code§ 49.60.180 (3)

134.    The State Human Rights Commission further provides that "RCW 49.60 and Title VII of the Civil Rights Act of 1964 prohibit discrimination in employment based on religion or creed. A religion or creed is defined broadly and includes observance, practice, and belief. A creed or religious belief includes those sincere and meaningful beliefs that occupy in the life of that individual a place parallel to that of God in a traditional religion. The beliefs can include sincerely held moral and ethical beliefs as to what is right and wrong, and beliefs that address ultimate ideas, or questions about life, purpose, and death."

135.    "[A] plaintiff establishes a prima facia claim under WLAD of failure to

COMPLAINT AND JURY DEMAND - 34

accommodate religious practices by showing that (1) he or she had a bona fide religious belief, the practice of which conflicted with employment duties; (2) he or she informed the employer of the beliefs and the conflict; and (3) the employer responded by subjecting the employee to threatened or actual discriminatory treatment." *Kumar v. Gate Gourmet Inc.*, 180 Wash. 2d 481 501, 325 P.3d 193, 203 (2014).

136.    Defendants refused to discuss with Bartholomew the requirements of his position, including refusing to discuss the amount of face-to-face work that was required for the position.

137.    Defendants refused to engage in an interactive process.

138.    Defendants desired to avoid, and deliberately avoided, a prospective accommodation of allowing Bartholomew to work in his current position with a workable accommodation for his religious belief.

139.    Defendants maintained their motivation was to comply with the Governor's Proclamation, however, Defendants were motivated also by a desire to deny a religious accommodation that would allow Defendant to retain his current role and to fulfil the essential functions of his position.

140.    Accommodating Bartholomew would not have resulted in an undue hardship on Defendants' operations.

141.    Defendants flat out refused, through silence and ignoring Bartholomew's outreach to discuss an accommodation, to engage in a discussion about how he could be accommodated in his role as Regional Fraud Manager.

142.    Due to Defendants' willful and or reckless violations of the WLAD, Bartholomew was damaged and is entitled to recover compensatory damages, back and front pay, reinstatement reputational damages, damages for emotional trauma and distress, punitive damages, reasonable

COMPLAINT AND JURY DEMAND - 35

attorneys' fees and costs of the action, pre- and post-judgment interest and injunctive relief.

143.    WHEREFORE, Plaintiff respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

### AS AND FOR A FOURTH CAUSE OF ACTION
**(Hostile Work Environment based on Religion - WLAD)**

144.    Plaintiff repeats and re-alleges the foregoing allegations contained in the preceding paragraphs as if fully set forth herein.

145.    Plaintiff was subject to harassment based on his religion from Defendants, which subjected him to terms and conditions of his employment that were different from those of persons of different religions and which ultimately led to his termination. This harassment was pervasive, chronic and severe and constitutes a hostile workplace.

146.    The hostile environment includes significantly that at no time after Plaintiff surfaced his request for an accommodation in the position he held did Defendants respond to discuss the reason for failing to accommodate Plaintiff in his position.

147.    Plaintiff was qualified to perform his duties as described herein.

148.    Due to Defendants' willful violations of Title VII, Plaintiff was damaged and is entitled to recover compensatory damages, back and front pay, reinstatement, reputational damages, damages for emotional trauma and distress, punitive damages, reasonable attorneys' fees and costs of the action, pre- and post-judgment interest and injunctive relief.

149.    Due to Defendants' willful violations of WLAD, Plaintiff was damaged and is entitled to recover compensatory damages, back and front pay, reinstatement, reputational damages, damages for emotional trauma and distress, punitive damages, reasonable attorneys'

fees and costs of the action, pre- and post-judgment interest, and injunctive relief.

150.    WHEREFORE, Plaintiff respectfully prays for relief against Defendants as

hereinafter set forth in his prayer for relief.

## AS AND FOR A FIFTH CAUSE OF ACTION
**(Violation of Religious Liberty Under the First and Fourteenth Amendments Pursuant to 42 USC §1983 - U.S. Constitution)**
**(Free Exercise)**
**Defendants Governor Jay Inslee in his Official and Individual Capacity; Donald Clintsman, in his Official and Individual Capacity; Wendy Long, in her Official and Individual Capacity; Steve Lowe, in his Official and Individual Capacity; and Leah Stahduhar, in her Official and Individual Capacity.**

151.    Plaintiff hereby incorporates all of the allegations contained in the previous

paragraphs of this complaint as though fully set forth herein.

152.    Defendants have imposed an unconstitutional burden on Plaintiff's exercise of

religion through their imposition of the vaccine mandate. The burden imposed on Plaintiff's

exercise of religion is substantial, in that the Defendants' mandate *inter alia* affect Plaintiff's

ability to: maintain employment, seek future employment, abide by the principles, beliefs, morals,

values, or practices of his religion, ostracizes plaintiff in society, discriminates against plaintiff

because of his religion, and causes other economic and non-pecuniary injuries including the

loss of promotional opportunity, benefits and insurance, and causes Plaintiff to endure mental

anguish and emotional distress concerning his ability to abide by his faith and further mental

anguish and emotional distress related to fear of physical or mental injury that has been and

continues to be directly and proximately caused by the Defendants' mandate.

153.    All of the acts of Defendants, their officers, agents, servants, and employees, as

alleged herein, were conducted by the Defendants under color and pretense of the statutes,

regulations, customs, policies and/or usages of the State of Washington and DSHS.

COMPLAINT AND JURY DEMAND - 37

154.    Defendants' policy was to offer both medical and religious exemptions and accommodations.

155.    Defendants ultimately denied Bartholomew's religious exemption request and terminated him because Bartholomew had informed Defendants that his religious convictions precluded him from receiving a Covid-19 vaccine.

156.    Bartholomew's religious conviction to not be vaccinated cannot be punished by the State of Washington by terminating him without engaging in an interactive process.

157.    The actions of Defendants, as alleged herein, are unconstitutional abridgements of Bartholomew's rights to the free exercise of religion secured by the First and Fourteenth Amendments to the United States Constitution.

158.    Accordingly, the First and Fourteenth Amendments require that Defendants compensate him for any and all damages including compensatory damages, back and front pay, reputational damages, damages for emotional trauma and distress, punitive damages, reasonable attorneys' fees and costs of the action, pre- and post-judgment interest.

159.    WHEREFORE, Plaintiff respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

## AS AND FOR A SIXTH CAUSE OF ACTION
**(Violation of Article I, Section II of the of the Washington Constitution)**
**(Discrimination Against Religion / Conscience)**
**Defendants Governor Jay Inslee in his Official and Individual Capacity; Donald Clintsman, in his Official and Individual Capacity; Wendy Long, in her Official and Individual Capacity; Steve Lowe, in his Official and Individual Capacity; and Leah Stahduhar, in her Official and Individual Capacity.**

160.    Plaintiff hereby incorporates all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

COMPLAINT AND JURY DEMAND - 38

161.    Article I, Section II of the Washington Constitution guarantees Bartholomew "[a]bsolute freedom of conscience in all matters of religious sentiment, belief, and worship." The same constitutional provision states that "no one shall be molested or disturbed in person or property on account of religion."

162.    A law, or government entwinement in a policy, burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny.

163.    A law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's interest in a similar way."

164.    Accordingly, where a State extends discretionary exemptions to a policy, it must grant exemptions for cases of religious hardship or present compelling reasons not to do so.

165.    Defendants, by their conduct and words, discriminated against Bartholomew because he acted according to his conscience, guided by his religion, in refusing to be vaccinated.

166.    Defendants' actions, as described herein, including hostility towards religious beliefs, as well as allowing secular exemptions from its policies, while denying religious exemptions, constitute a violation of Article I, Section II of the of the Washington Constitution.

167.    Defendants do not establish a compelling interest in denying Plaintiff's religious exemption while granting medical exemptions and allowing other religious exemptions.

168.    WHEREFORE, Plaintiff respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

169.    A plaintiff may recover for negligent infliction of emotional distress if she proves

COMPLAINT AND JURY DEMAND - 39

negligence, that is, duty, breach of the standard of care, proximate cause, and damage, and proves the additional requirement of objective symptomatology." *Strong v. Terrell*, 147 Wash. App. 376, 387 195 P.3d 977, 982 (2008) (citing *Kloepfel v.. Bokor*, 149 Wash.2d 192, 198, 66 P.3d 630,633 (2003).

170.    "[T]o establish a case of negligent infliction of emotional distress, a claimant must prove that her emotional distress is accompanied by objective symptoms and the 'emotional distress must be susceptible to medical diagnosis and proved through medical evidence." *Strong,* 147 Wash. App. at 388, 195 P.3d at 983 (quoting *Kloepfel,* 149 Wash.2d at 197, 66 P.3d 630).

171.    In *Kumar,* the court decided that implementing a meal policy that imposed a risk to the employees' religious well-being could possibly rise to the level of a claim for negligent infliction of emotional distress. See *Kumar,* 180 Wash. 2d at 506 325 P.3d at 205.

172.    In this case, the Plaintiff has endured the unconstitutional and unlawful orders and policies and has had his livelihood damaged, his savings adversely impacted, and was forced to relocate at great expense. The Defendants actions constitute negligent infliction of mental-emotional distress.

    **WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief against Defendants:

    A.    Enter judgment on the First Cause of Action declaring that Defendants have violated Title VII of the Civil Rights Act of 1964; declaring that Defendants had actual and constructive knowledge that violations of Title VII were occurring; declaring that Defendants' violations of Title VII were willful; enjoining future violations of the law by Defendants; awarding Plaintiff front and back pay; awarding Plaintiff compensatory damages, including but not limited to damages for emotional pain and suffering; awarding reputational damages;

awarding reinstatement; awarding Plaintiff punitive damages; awarding Plaintiff pre- and post-judgment interest; awarding Plaintiff reasonable attorneys' fees and costs; awarding injunctive relief; and awarding such other and further relief as the Court deems just and proper.

B.      Enter judgment on the Second Cause of Action declaring that Defendants have violated Title VII of the Civil Rights Act of 1964; declaring that Defendants had actual and constructive knowledge that violations of Title VII were occurring; declaring that Defendants' violations of Title VII were willful; enjoining future violations of the law by Defendants; awarding Plaintiff front and back pay; awarding Plaintiff compensatory damages, including but not limited to damages for emotional pain and suffering; awarding reputational damages; awarding reinstatement; awarding Plaintiff punitive damages; awarding Plaintiff pre- and post-judgment interest; awarding Plaintiff reasonable attorneys' fees and costs; awarding injunctive relief; and awarding such other and further relief as the Court deems just and proper.

C.      Enter judgment on the Third Cause of Action declaring that Defendants have violated the Washington Law Against Discrimination (WLAD); declaring that Defendants had actual and constructive knowledge that violations of the WLAD were occurring; declaring that Defendants' violations of the WLAD were willful; enjoining future violations of the law by Defendants; awarding Plaintiff front and back pay; awarding Plaintiff compensatory damages, including but not limited to damages for emotional pain and suffering; awarding reinstatement; awarding reputational damages; awarding Plaintiff punitive damages; awarding Plaintiff pre- and post-judgment interest; awarding Plaintiff reasonable attorneys' fees and costs; awarding injunctive relief; and awarding such other and

COMPLAINT AND JURY DEMAND - 41

1    further relief as the Court deems just and proper.

2        D.    Enter judgment on the Fourth Cause of Action declaring that Defendants have

3    violated the Washington Law Against Discrimination (WLAD); declaring that Defendants

4    had actual and constructive knowledge that violations of the WLAD were occurring;

5    declaring that Defendants' violations of the WLAD were willful; enjoining future violations

6    of the law by Defendants; awarding Plaintiff front and back pay; awarding Plaintiff

7    compensatory damages, including but not limited to damages for emotional pain and

8    suffering; awarding reinstatement; awarding reputational damages; awarding Plaintiff

9    punitive damages; awarding Plaintiff pre- and post-judgment interest; awarding Plaintiff

10    reasonable attorneys' fees and costs; awarding injunctive relief; and awarding such other and

11    further relief as the Court deems just and proper.

12        E.    Enter judgment on the Fifth Cause of Action declaring that Defendants have

13    violated Religious Liberty under the First and Fourteenth Amendments pursuant to 42 USC

14    §1983; declaring that Defendants had actual and constructive knowledge that violations of

15    Religious Liberty under the First and Fourteenth Amendments pursuant to 42 USC §1983

16    were occurring; declaring that Defendants' violations of Religious Liberty under the First and

17    Fourteenth Amendments pursuant to 42 USC §1983 were willful; enjoining future violations

18    by Defendants; awarding Plaintiff front and back pay; awarding Plaintiff compensatory

19    damages, including but not limited to damages for emotional pain and suffering; awarding

20    reinstatement; awarding reputational damages; awarding Plaintiff punitive damages;

21    awarding Plaintiff pre- and post-judgment interest; awarding Plaintiff reasonable attorneys'

22    fees and costs; and awarding such other and further relief as the Court deems just and proper.

23        F.    Enter judgment on the Sixth Cause of Action declaring that Defendants have

violated of Article I, Section II of the of the Washington Constitution; declaring that Defendants had actual and constructive knowledge that violations of Article I, Section II of the of the Washington Constitution were occurring; declaring that Defendants' violations of Article I, Section II of the of the Washington Constitution were willful; enjoining future violations by Defendants; awarding Plaintiff front and back pay; awarding Plaintiff compensatory damages, including but not limited to damages for emotional pain and suffering; awarding reinstatement; awarding reputational damages; awarding Plaintiff punitive damages; awarding Plaintiff pre- and post-judgment interest; awarding Plaintiff reasonable attorneys' fees and costs; and awarding such other and further relief as the Court deems just and proper.

G.     Enter judgment on the Seventh Cause of Action declaring that Plaintiff has suffered from the Defendants' Negligent Infliction of Emotional Distress; declaring that Defendants' violations were willful and or reckless; enjoining future violations by Defendants; awarding Plaintiff front and back pay; awarding Plaintiff compensatory damages, including but not limited to damages for emotional pain and suffering; awarding reinstatement; awarding reputational damages; awarding Plaintiff punitive damages; awarding Plaintiff pre- and post-judgment interest; awarding Plaintiff reasonable attorneys' fees and costs; and awarding such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 13, 2023.

SIMON PETER SERRANO
Attorney for Plaintiff

COMPLAINT AND JURY DEMAND - 43

1

2                    By:_____/s/ *Simon Peter Serrano*_____

3          Simon Peter Serrano, WSBA #54769
           Silent Majority Foundation
4          5238 Outlet Drive
           Pasco, WA 99301 (917) 587-8153
5          Email: pete@smfjb.org

6

7

8          DUNN EMPLOYMENT LAW, LLC
           Attorney for Plaintiff

9
                    By:_____/s/ *Christopher Dunn*__
10

11         Christopher Dunn (ct30900)
           P.O. Box 4124
12         Madison, Connecticut 06443
           Direct Dial: (203) 903-7650
13         Email: cdunn@dunnemploymentlaw.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of March, 2023, I electronically filed the foregoing

document with the Clerk of the United States District Court using the CM/ECF system which

will send notification of such filing to all parties who are registered with the CM/ECF system.


DATED this 13th day of March, 2023.


*/s/ Madeline Johnson*
Madeline Johnson

COMPLAINT AND JURY DEMAND - 45